<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ELISAUL DIAZ-ROJAS | HONORABLE KAREN M. WILLIAMS<br><br>Criminal No. 22-cr-650 (KMW)<br><br>**OPINION** |

**WILLIAMS, District Judge**:

This matter comes before the Court upon defendant Elisaul Diaz-Rojas' ("Defendant") motion to suppress evidence (ECF No. 16, "Def.'s Supp. Br.") and motion to dismiss the indictment (ECF No. 17, "Def.'s MTD Br."). The Government filed opposition to both motions (ECF No. 20, "Gov't Supp. Br."; ECF No. 21, "Gov't MTD Br."). Defendant replied. (ECF No. 22, "Def.'s Supp. Reply"; ECF No. 23, "Def.'s MTD Reply".) The Court having considered the parties' submissions and having heard the arguments of counsel during oral argument on March 5, 2025; and the Court noting the appearances of counsel: Kristen M. Harberg, Assistant U.S. Attorney, and Lindsey R. Harties, Assistant U.S. Attorney, U.S. Attorney's Office, District of New Jersey, appearing on behalf of the United States of America; and James P. Maguire, Assistant Federal Public Defender, Office of the Federal Public Defender, District of New Jersey, appearing on behalf of Defendant. For the reasons set forth below, Defendant's motions are **DENIED**.

I.      <u>**BACKGROUND**</u>

   a.   **The Instant Offense**

Defendant is charged, *inter alia*, with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (Def.'s MTD Br. at 2, ECF No. 17-1.) Specifically, the indictment alleges that on or about February 18, 2021, he knowingly possessed a firearm while knowing he had

previously been convicted of a felony. (*Id.*) If convicted, he faces up to 10 years of imprisonment as to this count. (*Id.*) The parties agree that the essential facts relevant to Defendant's motion to suppress are captured in audio and video recordings, including a bodycam worn by one of the Camden police officers involved. (Def.'s Supp. Br. at 2, ECF No. 16-1.) The following facts are drawn from the discovery materials supplied by the Government, the accuracy of which Defendant does not contest for purposes of the motions.[1] (*Id.* at 2 n.1; *see* Def.'s MTD Reply at 3.)

On February 18, 2021, Sergeant Anthony Berg and Officer Thomas Kohr of the Camden County Police Department responded to a dispatch request calling for "[u]nit to assist, panic alarm 644 North 9th, William Grocery." (Def.'s Supp. Br. at 2, ECF No. 16, Ex. 1 – Dispatch Recording; *see also* Gov't Supp. Br. at 2, ECF No. 20.) Sergeant Berg approached William Grocery, which is a small corner bodega in North Camden. (Def.'s Supp. Br. at 3.) As Berg was entering, Defendant exited the store, while a store employee stood inside sweeping the floor. (*Id.* at 3, Ex. 2 – Berg Bodycam Recording at 00:52). Berg asked, "is everyone good?," to which Defendant responded, "yeah, yeah, yeah." (Ex. 2 at 00:54.) Inside the store, a woman behind the register told Berg that "they're just arguing here." (Ex. 2 at 01:08.) Berg asked the woman if Defendant had a weapon and she responded that "the other guy have a weapon, yes." (Ex. 2 at 01:15.) Berg asked if the weapon was a gun, and the woman confirmed, "He has a gun. He has a gun. Please help." (Ex. 2 at 01:18.)

As Berg would later describe, "that's when I turned around and drew down on him." (Def.'s Supp. Br. at 3 (citing Ex. 2 at 12:55).) Berg also radioed Officer Kohr, who arrived just outside the store, to inform him, "Right there in the blue. Apparently, he has a 32," which is police code for a handgun. (Ex. 2 at 01:22.) Both officers drew their guns, approached Defendant —who was on a

---

[1] Defendant reserves the right to contest the accuracy of the Government's discovery materials at trial. (Def.'s Supp. Br. at 2 n.1.)

sidewalk across the street, walking away from the store—and shouted commands to "lay on the ground." (Def.'s Supp. Br. at 3 (citing Ex. 2 at 01:40-51).) Defendant complied, getting to his knees with his hands up and then laying face-down on the ground with his arms extended. (*Id.*) While Defendant was lying on the ground, both officers handcuffed him behind his back. (*Id.* (citing Ex. 2 at 01:59).) The officers announced that they had detained Defendant, after which Berg searched Defendant and discovered a firearm in his waistband. (*Id.* (citing Ex. 2 at 02:15).)

### b. Prior Criminal Convictions

Prior to his arrest for possessing a firearm on February 18, 2021, Defendant sustained three convictions for drug trafficking, each of which was punishable by more than one year imprisonment. (ECF No. 21 at 6.) On three separate occasions in 2015 and 2016, Defendant was arrested and charged with third-degree drug distribution. Defendant was originally sentenced to non-custodial terms of probation on the three convictions, but Defendant violated his probation in August 2018 and was sentenced to three years' imprisonment on each of the three convictions, to run concurrently. (*Id.* at 6.) Defendant was released from parole on three occasions between 2018 and 2020, and each time he violated his parole and was returned to custody. (*Id.*) On October 31, 2020, Defendant completed the custodial portion of his sentence for the three convictions by "maxing out" on his aggregate three-year term of imprisonment. (*Id.*) Four months later, on February 18, 2021, he allegedly committed the instant offense. (*Id.*)

After being charged by state law enforcement for firearm possession, terroristic threats, and related offenses in February 2021, Defendant was released on bail. (*Id.* at 7.) Thereafter, Defendant stopped reporting to his pre-trial services officer and absconded in violation of the conditions of his supervised release. (*Id.*) Two years later, Defendant was arrested in North Carolina for unlawfully possessing another firearm, as well as heroin, methamphetamine, and a

stolen motor vehicle. (*Id.*) Defendant was convicted in North Carolina of possession of a firearm by a previously convicted felon and possession of a stolen motor vehicle, culminating in a sentence to an aggregate term of 10 to 21 months' imprisonment. (*Id.*)

## II.   **LEGAL STANDARD**

### a.  **Motion to Suppress**

Federal Rule of Criminal Procedure 41(h) provides that "[a] defendant may move to suppress evidence in the court where the trial will occur, as Rule 12 provides." Fed. R. Crim. P. 41(h). A motion to suppress evidence must be raised before trial. Fed. R. Crim. P. l 2(b)(3)(C). Federal Rule of Criminal Procedure 12(b)(3)(C) permits defendants to file motions to suppress evidence before trial, but evidentiary hearings on such motions are not granted as a matter of course. *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2011) (citing Fed. R. Crim. Proc. 12(c)) (the court "may" schedule a motion hearing). The purpose of an evidentiary hearing in the context of a suppression motion is to assist the court in ruling upon a defendant's specific allegations of unconstitutional conduct—its purpose is not to assist the moving party in making discoveries that, once learned, might justify the motion after the fact. *Id.* A suppression motion requires an evidentiary hearing only when the defendant has presented a colorable constitutional claim and there are disputed issues of material fact that will affect the outcome of the motion to suppress. *Id.* The defendant bears the burden to establish the need for an evidentiary hearing, and "[t]hat burden can be met only upon the presentation of definite, specific, detailed, and nonconjectural facts." *United States v. Foster*, 287 F. Supp. 2d 527, 529 (D. Del. 2003); *accord United States v. Blackman*, 407 F. App'x 591, 594-95 (3d Cir. 2011).

**b. Motion to Dismiss**

A defendant may bring a motion to dismiss a criminal pleading under Federal Rule of Criminal Procedure 12. "In considering a defense motion to dismiss an indictment, the district court accepts as true the factual allegations set forth in the indictment." *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990). Under Federal Rule of Criminal Procedure 12(b)(1), "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R Crim. P. 12(b)(1). Where a defendant raises an as-applied challenge to an indictment, the Court must determine whether a law with some permissible uses "is nonetheless unconstitutional as applied" to the movant's specific conduct. *Spence v. Washington*, 418 U.S. 405, 414 (1974). By contrast, facial challenges require the Court to ask whether a law "could never be applied in a valid manner[,]" and as such, must be struck down in its entirety. *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 797-98 (1984). To succeed on a facial challenge, "the challenger must establish that no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The distinction between facial and as-applied challenges pertains to the "breadth of the remedy employed by the Court[.]" *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). Here, Defendant raises both as applied and facial challenges to Section 922(g)(1), which requires the Court to determine whether Section 922(g)(1) as applied to Defendant alone and as applied to all defendants is constitutional.

III.    **DISCUSSION**

a.    **Motion to Suppress**[2]

Defendant seeks suppression of the handgun that police seized on the basis that the officers did not have reasonable suspicion to stop him. The Fourth Amendment prohibits unreasonable seizures and searches. U.S. Const. amend. IV. "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause." *United States v. Brown,* 448 F.3d 239, 244 (3d Cir. 2006) (quoting *United States v. Robertson,* 305 F.3d 164, 167 (3d Cir. 2002)). There are, however, exceptions to the warrant requirement. An exception relevant here was established in *Terry v. Ohio,* 392 U.S. 1 (1968), announcing that "'an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable articulable suspicion that criminal activity is afoot.'" *Id.* (quoting *Illinois v. Wardlow,* 528 U.S. 119, 123 (2000)). "Any evidence obtained pursuant to an investigatory stop (also known as a '*Terry* stop' or a 'stop and frisk') that does not meet this exception must be suppressed as 'fruit of the poisonous tree.'" *Id.* at 244. There is no Fourth Amendment violation until there is a seizure. *United States v. Valentine,* 232 F.3d 350, 358 (3d Cir. 2000). Thus, the Court must first determine when the seizure occurred and then "evaluate the presence or absence of reasonable suspicion," considering "only 'the facts available to the officer at the moment of the seizure.'" *Brown,* 448 F.3d at 245.

**Seizure.** At the outset, the Court must decide at what point Defendant was seized because it determines which facts the Court can consider in analyzing whether the seizure was lawful. A seizure requires either physical force or, absent force, a show of authority. *California v. Hodari*

---

[2] In his reply, Defendant withdrew his request for an evidentiary hearing, stating he "agrees with the [G]overnment that this matter should be resolved on the basis of the evidentiary record now before the Court" without need for an evidentiary hearing. (Def.'s Supp. Reply at 1, 8.) Accordingly, the Court decides Defendant's motion to suppress without an evidentiary hearing.

*D.*, 499 U.S. 621, 626 (1991). A show of authority, such as ordering a person to stop, may constitute a seizure if two elements are present: (i) a reasonable person would not feel free to leave; and (ii) the person actually yielded to the show of authority. *Id.* at 625-29. The latter element is crucial, for the word seizure "does not remotely apply . . . to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure." *Id.* at 626; *see also Lowe*, 791 F.3d at 430 (assessing *Terry* stop under the same standards).

Here, a reasonable person would not have felt free to leave when Officer Berg—whom Defendant previously identified as an officer—pointed his service weapon at Defendant and ordered him to lie on the ground, then handcuffed him after he complied with the officer's instruction. (ECF No. 16-1 at 3.)  Accordingly, Defendant was seized when the officers made a show of authority and Defendant actually yielded to it. *See California*, 499 U.S. at 626.

**<u>Reasonable Suspicion.</u>** Defendant argues that the arresting officers lacked reasonable suspicion to stop him. (Def.'s Supp. Br. at 6-10.) Reasonable suspicion is less than probable cause but is more than a mere "hunch." *Terry*, 392 U.S. at 27. A court must "look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). "An officer's objective basis for suspicion must be particularized because the 'demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence.'" *Brown*, 448 F.3d at 246 (citing *Terry*, 392 U.S. at 22 n.18). This fact-intensive inquiry draws on the observations of the officer as analyzed against his training and experience. *Id.* Indeed, "officers [may] draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might

well elude an untrained person.'" *Id.* (quoting *Cortez*, 449 U.S. at 418). Additionally, courts have considered circumstances like a suspect's presence in a high-crime area, presence on a street at a late hour, or nervous, evasive behavior or flight from the police. *Brown*, 448 F.3d at 251.

The Government urges the Court to consider the following factors in assessing reasonable suspicion: Defendant's presence in high narcotic trafficking location with citizen complaints to law enforcement regarding illegal activity; that the officers were responding to an activated panic alarm; Defendant's evasive action as the officers arrived at the scene; and Sergeant Berg's observations of the shop owner and employee acting nervously, positioning themselves away from Defendant, asking the officers for help, and telling them that Defendant had a gun and was arguing with one of them. (Gov't Supp. Br. at 8-9, ECF No. 20.)

The Court finds that reasonable suspicion existed for the stop. The Court finds that the area of the incident was in high narcotic trafficking location with citizen complaints to law enforcement regarding illegal activity. The Court further finds that Defendant abruptly exited the store and crossed the street when the officers arrived on the scene in response to a dispatch call for an activated panic alarm. The Court finds credible Sergeant Berg's observations of the shop owner and employee acting nervously, positioning themselves away from Defendant, asking the officers for help, and telling them that Defendant had a gun and was arguing with one of them. (Gov't Supp. Br. at 8-9, ECF No. 20.) Considering all the foregoing circumstances together, the Court finds that a reasonable officer would be suspicious that Defendant possessed a firearm and used it to threaten someone in the store, justifying the officers in stopping and detaining Defendant to investigate, at a minimum, whether criminal activity was afoot, *see Terry*, 392 U.S. at 1, and more specifically, the crimes of terroristic threats as proscribed by N.J.S.A. 2C:12-3a; and possession of

a firearm with a purpose to use it unlawfully against a person or the property of another in violation of N.J.S.A. 2C:39-4a(1).

**__Warrantless Search of Defendant.__** Defendant argues that the officers did not have reason to believe that he was armed and dangerous to justify the brief protective *Terry* frisk. (Def.'s Supp. Br. at 11-12.) It is well-settled that when an officer has "reason to believe that he is dealing with an armed and dangerous individual," he or she may conduct "a reasonable search for weapons for the protection of the police officer." *Terry*, 392 U.S. at 27; *U.S. v. Gatlin*, 613 F.3d 374, 378 (3d Cir. 2010). This is so because "a police officer conducting an investigative stop has an 'immediate interest . . . in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him.'" *United States v. Johnson*, 592 F.3d 442, 452 (3d Cir. 2010) (citing *Terry*, 392 U.S. at 23).

The purpose of a protective *Terry* frisk is not to discover evidence of a crime. Instead, the purpose is to allow the police to pursue their investigation without fear of violence, and so the police may search the outer clothing of the seized person in an attempt to discover weapons which might be used to assault the officer. *United States v. Graves*, 877 F.3d 494, 499-500 (3d Cir. 2017). Because the purpose of this limited search is to ensure officer safety, the frisk may be permissible "whether or not carrying a concealed weapon violate[s] any applicable state law," so long as it is conducted pursuant to a lawful stop. *Gatlin*, 613 F.3d at 379 (citing *Adams v. Williams*, 407 U.S. 143, 146 (1972)).

As the Court previously found, the officers had reasonable suspicion to believe that Defendant unlawfully possessed a firearm with criminal intent. This was supported by the fact that the officers were responding to a panic alarm; the officer's observations—based on their training and experience—of the nervous demeanor of the shop owner and his employee when

9

they arrived on the scene; Defendant's evasive actions; and the shopkeeper asking the officers for help and telling them that Defendant had a gun.

The Court finds that, considering all the foregoing circumstances together, a reasonable officer would be suspicious that Defendant was armed and dangerous, which justified the officers in conducting a *Terry* frisk upon stopping Defendant to ensure officer safety. During their lawful *Terry* frisk of Defendant, the officers lawfully discovered a pistol in Defendant's waistband. Accordingly, for all the foregoing reasons, the Court **DENIES** Defendant's motion to suppress.

### <u>The Officers Did Not *De Facto* Arrest Defendant When They Pointed Their Guns at Him and Handcuffed Him</u>.

Defendant argues the officers, without probable cause, *de facto* arrested him when they pointed their guns at him and handcuffed him. (Def.'s Supp. Br. at 14.) The Third Circuit has squarely rejected a *per se* rule that pointing a gun at a suspect, and/or handcuffing a suspect, automatically transforms a *Terry* stop into a full-blown arrest which must be predicated on probable cause. *Johnson*, 592 F.3d at 447-48. Instead, when an officer has a reasonable basis to believe that an individual is armed and presently dangerous, he or she may "take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Id.* at 452. Depending on the circumstances, the police may point a gun at the suspect and handcuff the suspect. *Id.* at 452-53 (holding that the use of guns and handcuffs was "clearly" justified when police responded to a report of a shooting just minutes before). Reviewing courts must focus on the overall reasonableness of the officer's conduct in light of all of the circumstances. *Id.* at 452. Here, the Court finds that the officers did not *de facto* arrest Defendant by pointing a gun at him and handcuffing him prior to discovering the gun because the officers had a reasonable basis to believe that Defendant was armed and dangerous based on the totality of the circumstances warranting the stop and detention of Defendant.

b. **Motion to Dismiss**

i. *As-Applied Challenge*

Defendant's motion to dismiss the indictment is centered on his argument that his conduct was protected by the Second Amendment and thus § 922(g)(1) is unconstitutional as applied to him. First, Defendant argues with respect to Step One of the *Bruen* test that his conduct is presumptively protected by the Second Amendment. (Def.'s MTD Br. at 12-14.) Second, Defendant argues with respect to Step Two of the *Bruen* test that § 922(g)(1) is unconstitutional as applied to him. (*Id.* at 15-20.) Third, Defendant argues that § 922(g)(1) is unconstitutional on its face. (*Id.* at 23-25.) For the reasons that follow, the Court **DENIES** Defendant's motion to dismiss.

The Second Amendment mandates that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. "In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment 'confer[s] an individual right to keep and bear arms' for traditionally lawful purposes, such as self-defense within the home." *United States v. Quaites*, 126 F.4th 215, 219 (3d Cir. 2025) (citing *Heller*, 554 U.S. 570, 595, 629). But "the right secured by the Second Amendment," the Court clarified, "is not unlimited." *Id.* at 626. To that end, it cautioned that "nothing in [its] opinion should be taken to cast doubt" on laws like § 922(g)(1) that prohibit "the possession of firearms by felons." *Id.* at 626–27, n.26. "The Court 'made the constitutional standard endorsed in *Heller* more explicit' in *Bruen* by announcing a new two-step analytic framework for analyzing Second Amendment challenges to firearm regulations." *Quaites*, 126 F.4th at 219 (citing *Bruen*, 597 U.S. at 31). "Courts must first determine whether 'the Second Amendment's plain text covers an individual's conduct.'" *Id.* at 219. "If it does, the Second Amendment 'presumptively protects that conduct,' and courts must proceed to *Bruen*'s second

11

step, where 'the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.'" *Id.* "If the government satisfies its burden, the firearm regulation passes constitutional muster." *Id.*

The law at issue in this case prohibits the possession of a firearm by anyone with a felony conviction, defined as a crime "punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). The ban lasts for life unless the prohibited person can convince the Attorney General of the United States to lift the disability. *See* 18 U.S.C. § 925(c). In *Range v. Attorney General*, 124 F.4th 218, 232 (3d Cir. 2024) (*Range* II), the Third Circuit narrowly held, based on its particular facts, that 18 U.S.C. § 922(g)(1) was unconstitutional as applied to a felon who filed a civil action for a declaratory judgment to prospectively seek approval to possess a firearm after completing his sentence because he was not a dangerous person. "Courts in the Third Circuit have, even after *Range*, found almost uniformly that bans on possession of firearms by a person previously convicted of crimes is constitutional." *United States v. Cadet*, No. 21-cr-630, 2025 WL 101183, at *2 (D.N.J. Jan. 15, 2025) (citing *United States v. Williams*, No. 23-cr-690, 2024 WL 1604632, at *6 (D.N.J. Apr. 12, 2024)). "This includes a variety of predicate convictions for a defendant's § 922(g)(1) charge imputing some level of dangerousness or other basis for distrust." *Id.* "These cases are consistent with the Third Circuit's caution that *Range*'s holding was a 'narrow one' limited to the particular, distinguishable facts present in that case: a civil petition for possession of a weapon in the home by someone who had completed their sentence for a non-'dangerous' felony." *Id.* (footnotes omitted)

Recently, in *United States v. White*, No. 23-cr-3013, 2025 WL 384112, at *2 (3d Cir. Feb. 4, 2025), the Third Circuit held that § 922(g)(1) is constitutional on its face and as applied to a defendant charged with a violation of § 922(g)(1) because the district court found he "present[s] a

special danger of misus[ing firearms]," *United States v. Rahimi*, 602 U.S. 680, 698 (2024), and

would likely pose an increased risk of "physical danger to others" if armed, *Range*, 124 F.4th at

232, because of his prior felony convictions for drug distribution, aggravated assault, and carrying

a firearm. *White*, 2025 WL 384112, at *2 (quoting *Rahimi* and *Range* II). "As our recent *en banc*

decision in *Range* explained, a court deciding whether an individual poses an increased risk of

'physical danger to others,' *id.* at 232, may consider not just the nature of the underlying offense,

but also the felon's entire criminal history, *see id.* at 222–23." *White*, 2025 WL 384112, at *2.

Accordingly, the Third Circuit held that "the District Court did not err by denying [the defendant's]

motion to dismiss the indictment," which challenged the constitutionality of § 922(g)(1) as applied

to a felon-in-possession. "*Rahimi* did bless disarming (at least temporarily) physically dangerous

people. The law that it upheld required 'a finding that [the defendant] represents a credible threat

to [someone else's] physical safety.'" *Range*, 124 F.4th at 230 (citing 18 U.S.C. § 922(g)(8)(C)(i)

and *Rahimi*, 144 S. Ct. at 1894-96). "It did so 'because the Government offer[ed] ample evidence'

of a tradition of disarming people who 'pose[ ] a clear threat of physical violence to another.'" *Id.*

at 1898, 1901; *accord Rahimi*, 144 S. Ct. at 1898 ("credible threat to the physical safety of others").

### A. *Bruen* Step One.

At step one of *Bruen*, the Court must decide whether the text of the Second Amendment

applies to a person and his proposed conduct. It is undisputed that Defendant is one of "the people"

to which the Second Amendment applies.[3] The Government argues that Defendant "has not met

his burden at step one to show that his proposed course of conduct is constitutionally protected."

(Gov't MTD Br. at 9.) Defendant argues that his conduct—possession of a firearm—is protected

by the plaint text of the Second Amendment. (Def.'s MTD Br. 12-15.)

---

[3] The Government indicated at oral argument that it agrees that Defendant is "one of the people that is protected by the Second Amendment." (March 5, 2025 Oral Argument Tr. 46:23-24.)

As the Supreme Court held in *Bruen*, "the [Second Amendment] right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." 597 U.S. at 21. Rather, "the Second Amendment protects a personal right to keep and bear arms for *lawful purposes*." *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010) (emphasis added). Thus, "the Second Amendment does not protect a criminal defendant's right to possess a firearm while engaging in criminal acts." *United States v. Rogers*, No. 23-cr-582, 2024 WL 2844545, at *7 (D.N.J. June 5, 2024); *see also United States v. Velazquez*, No. 23-cr-657, 2024 WL 49690, at *12 (D.N.J. Jan. 4, 2024) ("[T]his Court gravely doubts the Second Amendment's text protects [defendant's] conduct—possessing a firearm while allegedly engaging in drug trafficking."); *United States v. Claiborne*, No. 22-cr-672, 2024 WL 112603, at *4 (D.N.J. Jan. 10, 2024) ("[K]nowing, unlicensed possession of a weapon by a felon outside the home, regardless of the purpose—is not protected by the Second Amendment.").

As the party raising an as-applied Second Amendment challenge, the defendant bears the burden to prove by a preponderance of the evidence "that the law or regulation at issue burdens conduct protected by the Second Amendment." *Binderup v. Att'y Gen.*, 836 F.3d 336, 356 (3d Cir. 2016) (en banc) (Ambro, J.), *abrogated on other grounds by Bruen*, 597 U.S. 1; *see Rogers*, 2024 WL 2844545, at *7 ("Rogers has not shown, by a preponderance of evidence, that he was carrying a handgun for a lawful purpose at the time of his arrest"); *see also Velazquez*, No. 23-cr-657 (RMB), 2024 WL 49690, at *12 (D.N.J. Jan. 4, 2024) ("Velazquez has submitted no evidence that he was engaged in Second Amendment conduct when he possessed the gun, and therefore his as-applied challenge fails"); *see also Range*, 124 F.4th at 225 (noting only if the test of the Second Amendment applies to a person and his proposed conduct at step one of *Bruen* does the burden of proof shift to the government to show the regulation is part of a historical tradition).

14

"[T]he Second Amendment right . . . extends only to certain types of weapons," *Heller*, 554 U.S. at 623, specifically, those "in common use' today for self-defense," *Bruen*, 597 U.S. at 32 (quoting *Heller*, 554 U.S. at 627). This "limitation is fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Heller*, 554 U.S. at 627. Indeed, the Supreme Court has specifically held that the Second Amendment does not create a right to possess short-barreled shotguns. *United States v. Miller*, 307 U.S. 174, 178 (1939). Such "dangerous and unusual firearms" are more conducive to "use in illicit activity" and have a "heightened capability to cause damage." *United States v. Marzzarella*, 614 F.3d 85, 95 (3d Cir. 2010). The Third Circuit has opined that although large capacity magazines have "been used for self-defense," they are "not necessary or appropriate for self-defense." *Ass'n of New Jersey Rifle & Pistol Clubs, Inc. v. Att'y Gen. New Jersey*, 910 F.3d 106, 112, 118, 122 (3d Cir. 2018). The Third Circuit has also held that stolen firearms are not in common use for lawful purposes, but "are used disproportionately in the commission of crimes.'" *United States v. Mobley*, 956 F.2d 450, 454 (3d Cir. 1992).

With respect to Defendant's possession of the charged firearm without a permit, New Jersey law provides a statutory presumption applicable to the crime which states that "[w]hen the legality of a person's conduct under this chapter depends on the possession of a . . . permit . . . , it shall be presumed that he does not possess such a . . . permit . . ., until he established the contrary." N.J.S.A. 2C:39-2. The New Jersey Supreme Court, in *State v. Ingram,* 98 N.J. 489, 500 (1985), definitely held that "once possession of a weapon is shown and an accused fails to come forward with evidence of a permit, the State may employ the statutory presumption of N.J.S.A. 2C:39-2 to establish the absence of a required permit."

The Court finds that Defendant has not met his burden at Step One of demonstrating that he possessed the charged gun for "ordinary self-defense needs." *Bruen*, 597 U.S. at 60. The Second Amendment does not protect possession of a firearm in connection with a crime. *See, e.g., United States v. Harris*, No. 20-cr-00679, 2024 WL 2260907, at *5 (D.N.J. May 17, 2024) (Martinotti, J.) (denying *Bruen* motion where defendant was charged under both § 922(g)(1) and § 924(c) for possessing a firearm "in connection with drug trafficking."); *Velazquez*, 2024 WL 49690, at *12 (Bumb, Ch. J.) (same for § 922(g)(1) case where defendant proffered nothing in support of his challenge and other evidence showed that he possessed the gun in connection with a drug deal).

Here, the Government alleges that Defendant used a stolen high-capacity magazine firearm to facilitate the crime of terroristic threats, for which he was charged with terroristic threats and receiving stolen property. Defendant has presented no affirmative countervailing evidence to suggest that the gun was not stolen property. *See* N.J.S.A. 2C:20-3b (crime of theft by unlawful taking or disposition); 18 U.S.C. § 922(j) (crime of possession of any stolen firearm which was in interstate commerce); *see also* Indictment (ECF No. 1) (charging Defendant with knowing possession of firearm that "was in and affecting interstate commerce"); *Besmajian*, 910 F.2d at 1154 ("In considering a defense motion to dismiss an indictment, the district court accepts as true the factual allegations set forth in the indictment."). Tellingly, Defendant does not even deny in his papers that the gun was stolen, only that he lacked the *mens rea* to support a charge for knowingly receiving stolen property.[4] (Def.'s MTD Reply at 9-10); *see Mobley*, 956 F.2d at 454. Nor does Defendant deny that the firearm had a high-capacity magazine. (*See id.* at 9); *see Ass'n of New Jersey Rifle & Pistol Clubs, Inc.*, 910 F.3d at 112, 118, 122. Moreover, regardless of whether the charged gun was stolen, Defendant has not established that he had a permit to carry

---

[4] In his motion to suppress reply, Defendant does not dispute the Government's claim that the gun he used was stolen. (*See* Def.'s Supp. Reply at 1-8, ECF No. 22.)

the gun at issue—and the knowing, unlicensed possession of a firearm is itself a crime. *See* N.J.S.A. 2C:39-2; *Claiborne*, 2024 WL 112603, at *4.

Accordingly, the Court finds that at step one of *Bruen* Defendant has failed to affirmatively satisfy his burden to prove by a preponderance of the evidence that he possessed the charged firearm for a "lawful purpose" as required to establish that the text of the Second Amendment applies to his proposed conduct.

### B. *Bruen* Step Two.

The Court, having found that Defendant failed to satisfy step one of the *Bruen* framework, need not reach step two. For the sake of completeness, even if the Second Amendment covers Defendant's proposed conduct, the Court finds that his as-applied challenge fails to satisfy the second step of *Bruen*.

Defendant argues that § 922(g)(1) is unconstitutional as applied to him because no relevantly similar laws at the founding would have precluded him from possessing a firearm. (Def.'s MTD Br. at 15.) He contends that the lack of distinctly similar historical laws is relevant evidence of § 922(g)(1)'s unconstitutionality, shifting the burden to the Government to demonstrate relevantly similar historical evidence in support of § 922(g)(1). (*Id.* at 18-20.) As previously stated, and acknowledged by the Third Circuit in *Range II*, the Supreme Court in *Rahimi* blessed disarming (at least temporarily) physically dangerous people because it recognized a historical tradition of the Government disarming people who pose a clear threat of physical violence to another. *Range II*, 124 F.4th at 230.

Courts in this District have upheld § 922(g)(1) under the historical-tradition test. *See Rogers*, 2024 WL 2844545, at *9 (Wigenton, J.) ("Considering the overwhelming body of historical analogies, precedent, and persuasive authority, this Court finds that § 922(g)(1) is

constitutional as applied to Rogers under the historical test outlined in *Bruen*."); *see also Harris*, 2024 WL 2260907, at *7 (Martinotti, J.) ("Defendant's prior conviction of a violent felony establishes him as a danger to society who historically would have been disarmed."); *United States v. Laureano*, No. 23-cr-12, 2024 WL 838887, at *8 (D.N.J. Feb. 28, 2024) (Padin, J.) ("Considering the overwhelming body of historical analogues, precedent, and persuasive authority, the Court finds that § 922(g)(1), as applied, is constitutional based on the predicate convictions, at least one of which is for drug trafficking."); *United States v. Boone*, 2024 WL 965146, at *8 (D.N.J. Mar. 6, 2024) (Shipp, J.) ("the Court finds that the Government has carried its burden in this case of demonstrating that Section 922(g)(1) is constitutional as applied to Defendant," who had multiple prior felonies for drug trafficking and a weapons offense); *United States v. Mangan*, No. 23-cr-588, 2024 WL 4025955, at *2 (D.N.J. Sept. 3, 2024) (Neals, J.) ("18 U.S.C. § 922(g)(1) is rooted in the Nation's founding.").[5]

In assessing whether historical tradition supports disarmament, the Court "may consider not just the nature of the underlying offense, but also the felon's entire criminal history." *White*, 2025 WL 384112, at *2; *see Range II*, 124 F.4th at 230, 232 (looking for record evidence regarding whether the challenger prospectively "poses a physical danger to others"). Here, the Court considers that Defendant has a criminal history of multiple drug-trafficking convictions. The Court notes the robust precedent previously cited recognizing the nexus between drug trafficking and illegal gun violence, which acknowledge the longstanding tradition of legislatures disarming individuals who pose a danger to themselves or others.

Accordingly, the Court finds that § 922(g)(1) is constitutional as applied to Defendant because his past convictions for three drug-trafficking felonies justified his disarmament.

---

[5] *See also United States v. Johnson*, No. 24-151 (ECF Nos. 58-59) (Minute Entry and Order dated Aug. 13, 2024) (motion to dismiss denied from the bench following oral argument) (Williams, J.).

While the foregoing is sufficient to deny Defendant's as-applied challenge, the Court further notes that Defendant's conduct in absconding from his pretrial release only to be arrested in North Carolina in 2023 in unlawful possession of yet another firearm, as well as heroin, methamphetamine, and a stolen motor vehicle is consistent with the Court's finding that Defendant is an individual who the Government may constitutionally disarm by application of § 922(g)(1) without violating the Second Amendment.

### ii. Facial Challenge

Defendant challenges the constitutionality of § 922(g)(1) on its face. (Def.'s MTD Br. at 23-24.) As the Supreme Court held in *Rahimi*, "the Government need only demonstrate that [a statute] is constitutional in some of its applications" to defeat a facial challenge. 144 S. Ct. at 2898. "The fact that [§ 922(g)(1)] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since" the Supreme Court has "not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *United States v. Salnjnnerno*, 481 U.S. 739, 745 (1987). Robust precedent from the Third Circuit and this District cited throughout this opinion have rejected facial challenges to the constitutionality of § 922(g)(1).

Accordingly, the Court finds that Defendant has failed to demonstrate that § 922(g)(1) is facially unconstitutional.

## IV.    CONCLUSION

For all the foregoing reasons, Defendant's motion to suppress and motion to dismiss are **DENIED**. An accompanying Order shall issue.

Dated: April 25, 2025

*Karen M. Williams*

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE